**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN MEE,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Civil Action No. 13-03754(JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

Before the Court is Plaintiff John Mee ("Plaintiff")'s appeal, seeking review of a final determination by Administrative Law Judge ("ALJ") Leonard Olarsch denying his application for a period of disability and disability insurance benefits ("DIB"). The Court resolves this matter on the parties' briefs pursuant to Local Civil Rule 9.1(f). For the reasons set forth below, the Court **REMANDS** the final decision of the Commissioner of Social Security.

**I.　　BACKGROUND**

This case turns on whether substantial evidence supports the ALJ's decision that Plaintiff was not under a disability within the meaning of the Social Security Act from May 30, 2000, when he alleged he became disabled, through September 30, 2004, the date he was last insured.

Plaintiff maintains that he was disabled within the meaning of the Social Security Act from May 30, 2000 through July 18, 2011, the date of the ALJ's decision. (*See* Pl.'s Br. 1, ECF No. 7). Plaintiff was born on September 22, 1947, and applied for benefits in October 2008. (R.

at 132).¹ He was previously married but divorced his wife in September of 1983. (*Id.* at 133). He remains single and does not have any children. (*Id.*). Since 1995, Plaintiff has generally lived in an attic "not outfitted with proper heating, air conditioning, plumbing, ventilation, lighting or bedding." (*Id.* at 1106). He moved into a shelter during the summer and winter months due to weather extremes. (*Id.*). Plaintiff began receiving services at the East Orange Veterans Hospital in February 2007, at which time he was homeless. (*Id.*).

Plaintiff has a master's degree in business administration. (*Id.*). From 1970 through 1973, he worked as a Russian linguist in the military and then worked in a government job from 1975 through 1987. (*Id.*). In 1987, he began to show poor work stability and he ultimately ceased working in 1994. (*Id.*).

Plaintiff maintains that he is disabled due to the limitations resulting from his major depression and anxiety disorder.² A discussion of Plaintiff's impairments follows.

A. <u>Plaintiff's Major Depression and Anxiety Related Disorder</u>

Plaintiff suffers from major depression, which has resulted in his complete social isolation, suicidal ideation, and poor overall functioning. (*Id.* at 1106). Despite ongoing treatment, Plaintiff continues to suffer from symptoms of major depression and anxiety. (*Id.*). In September 2007, Dr. Andrea Cruz, a clinical psychologist of the East Orange Veterans Hospital, began treating Plaintiff. (*Id.*). At that time, he presented with "a significant history of major depression, anxiety, and alcohol dependence." (*Id.*). In particular, Dr. Cruz noted and further testified at the hearing before the ALJ that Plaintiff's alcohol dependence had been in remission for several years and that it has shown itself to be a secondary illness. (*Id.* at 42, 47,

---

¹ "R." refers to the pages of the Administrative Record.
² Plaintiff initially filed for disability benefits on the basis of ischemic heart disease and major depression. However, he has since conceded that there was no evidence that ischemic heart disease existed prior to his date last insured and that the ischemic heart disease was not diagnosed until 2008. (Pl.'s Br. 5). As such, this Opinion discusses only Plaintiff's major depression and anxiety related disorder.

2

1106). Dr. Cruz's notes from September 13, 2010 also state that Plaintiff was disabled well prior to 2004 and that he continues to be disabled. (*Id.* at 42-43, 1106).

Dr. Fouad Eljarrah, Plaintiff's psychiatrist, opined in a November 5, 2010 report that Plaintiff's alcoholism was not a significant factor contributing to his disability. (*Id.* at 2362). On March 13, 2011, Dr. Eljarrah completed a Psychiatric Review Technique (PRT) form, specifically diagnosing Plaintiff with depressive syndrome (Listing 12.04) and an anxiety related disorder (Listing 12.06). (*Id.* at 2365). The PRT additionally provided that Plaintiff suffered from marked limitations/difficulties in: (1) restrictions of daily living; (2) maintaining social functioning; and (3) maintaining concentration, persistence or pace. (*Id.* at 2375). The PRT also noted that Plaintiff has suffered three episodes of decompensation of extended duration. (*Id.* at 2375).

In support of his findings as to the depressive syndrome, Dr. Eljarrah provided that Plaintiff suffered from a pervasive loss of interest in almost all activities, appetite disturbance with change in weight, sleep disturbances, psychomotor agitation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating, and thoughts of suicide. (*Id.* at 2368). In support of his findings as to the anxiety related disorder, Dr. Eljarrah found that Plaintiff suffered from a general anxiety disorder accompanied by the following: motor tension, autonomic hyperactivity, apprehensive expectation, and vigilance/scanning. (*Id.* at 2370). Dr. Eljarrah further noted that, Plaintiff's anxiety-related disorder was characterized by the following: a persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week; recurrent obsession or compulsions which are a source of

3

marked distress; and recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress. (*Id.*).

At the hearing before ALJ Olarsch, Dr. Cruz testified that she agreed with Dr. Eljarrah's PRT findings. (*Id.* at 60). She additionally testified that Plaintiff's major depression and anxiety did not begin during the period of September 30, 2004 to February 2007, but rather that Plaintiff suffered from major depression and anxiety long before September 30, 2004. (*Id.* at 63).

B.  Procedural History

Plaintiff initially filed an application with the Social Security Administration for benefits on October 21, 2008. (*Id.* at 132). On January 15, 2009, the Administration denied Plaintiff's request for disability benefits. (*Id.* at 77). Plaintiff submitted a request for reconsideration on May 3, 2010. (*Id.* at 87). Thereafter, the Administration had Plaintiff's claim independently reviewed by a physician and disability examiner upon his request for reconsideration. (*Id.* at 89). Subsequently, on July 7, 2011, Plaintiff requested a hearing before an ALJ. (*Id.* at 95). The hearing was held before ALJ Olarsch on June 16, 2011 in Newark, New Jersey. (*Id.* at 27, 31).

On July 18, 2011, ALJ Olarsch issued a decision finding that Plaintiff was not disabled from September 30, 2004 through the date of decision. (*Id.* at 18-22). Thereafter, on September 12, 2011, Plaintiff sought Appeals Council review of ALJ Olarsch's decision. (*Id.* at 5). The Appeals Council denied Plaintiff's request on April 15, 2013, rendering the ALJ's decision the final decision of the Commissioner. (*Id.* at 1). As a result, Plaintiff appealed to this Court on June 18, 2013. (Compl., ECF No. 1). This Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g).

## II. LEGAL STANDARD

### A. The Five-Step Process for Evaluating Whether a Claimant Has a Disability

Under the Social Security Act, the Administration is authorized to pay DIB to "disabled" persons. 42 U.S.C. § 423(a). A person is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). At step one, the ALJ assesses whether the claimant is currently performing substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and, thus, the process ends. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has a "severe" physical or mental impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant is not disabled. *Id.* Conversely, if the claimant has such impairment, the ALJ proceeds to step three. *Id.* At step three, the ALJ evaluates whether the claimant's severe impairment either meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* Otherwise, the ALJ moves on to step four, which involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental

>demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, the ALJ proceeds to the fifth and final step of the process. *Id.*

The claimant bears the burden of proof for steps one through four. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007) (citing *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004)). "At step five, the burden of proof shifts to the Social Security Administration to show that the claimant is capable of performing other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and [RFC]." *Id.* (citing *Ramirez*, 372 F.3d at 551).

B. The Standard of Review: "Substantial Evidence"[3]

This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted).

---

[3] Because the regulations governing supplemental security income—20 C.F.R. § 416.920—are identical to those covering disability insurance benefits—20 C.F.R. § 404.1520—this Court will consider case law developed under both regimes. *Rutherford v. Barnhart*, 399 F.3d 546, 551 n. 1 (3d Cir. 2005) (citation omitted).

6

Consequently, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

## III. DISCUSSION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period at issue. (R. at 20). At step two, the ALJ determined that throughout the date last insured there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. (*Id.*). Thus, the ALJ concluded that Plaintiff was not disabled and did not proceed beyond step two of the five-step sequential evaluation. (*Id.* at 21). Plaintiff contends that this Court should remand the ALJ's decision at step two because the ALJ: (1) improperly focused on Plaintiff's failure to seek treatment; (2) improperly established an onset date and further failed to consult a medical advisor; and (3) failed to give controlling weight to treating source opinion and substituted his own opinion for the opinions of the treating physicians. (Pl.'s Br. 11). Plaintiff additionally requests that if this case is remanded, it be remanded to a different ALJ. (*Id.* at 27). The Court finds that the ALJ's failure to establish an onset date and consult a medical advisor in doing so warrants remand in this case. *See e.g. Mauriello v. Astrue*, CIV.09-3360 (RMB), 2010 WL 2079717 at *8 (D.N.J. May 25, 2010) (remanding the ALJ's determination where the ALJ failed to apply SSR 83-20 in determining the onset date of plaintiff's disability).

### A. Whether the ALJ Improperly Determined the Onset Date and Failed Consult a Medical Advisor in Violation of SSR 83-20

Plaintiff contends that the ALJ's determination at step two violated SSR 83-20. (Pl.'s Br. 14). In particular, Plaintiff argues that the ALJ made no effort to determine the onset date of Plaintiff's major depression. (*Id.* at 14-15). Additionally the ALJ rejected the opinions of

7

treating sources and failed to seek the opinion of a medical advisor to assist in determining the onset date. (*Id.* at 15). Defendant counters that (1) SSR 83-20 is inapplicable in this case because the ALJ's determination that Plaintiff was not disabled obviated the duty under SSR 83-20 to determine an onset date of disability; and (2) in the alternative, SSR 83-20 applies to establishing the onset of slowly progressive impairments and Plaintiff has failed to establish that his major depression was a slowly progressive impairment. (Def.'s Br. 18-19).

Defendant's first argument, that SSR 83-20 does not apply here because the ALJ's determination that Plaintiff was not disabled relieved him of the duty to determine the onset date of Plaintiff's alleged disability is unpersuasive. (*See id.* at 18). As an initial mater, the step-two inquiry into severity "is a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) (citations omitted). "Although the regulatory language speaks in terms of 'severity,' the Commissioner has clarified that an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004); *see also Jakubowski v. Comm'r of Soc. Sec.*, 215 F. App'x 104, 107 (3d Cir. 2007) (internal citations omitted) (holding that "[i]f the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue."). SSR 83-20 provides that

> [w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

8

It is well established that SSR 83-20 is applicable to situations such as this one, where medical evidence from the relevant period is unavailable. *Newell*, 347 F.3d at 549 (citing *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991)) ("In the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor.").

Here, Dr. Cruz testified that she never spoke to anyone who treated Plaintiff prior to the relevant period. (R. at 43). However, Dr. Cruz further testified that she did not think that anyone in their right mental state would live in an attic for over ten years when his family members were encouraging him to move into an apartment in the basement of the house. (*Id.* at 48-49). Dr. Cruz further explained that prior to September 2004 Plaintiff did not have any activities outside of the attic and that he spent most of his time there. (*Id.* at 49). The ALJ did not question Plaintiff as to why he failed to seek medical treatment prior to February 2007. Rather, the ALJ's questioning of Plaintiff pertained to whether he suffered from a cardiac disorder and whether Plaintiff was disabled prior to September 2004. (*Id.* at 35-36, 68); *see also Newell*, 347 F.3d at 547 (internal citations omitted) (holding that "[r]etrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past impairment."). Thus, the evidence presented at the hearing before the ALJ should have prompted the ALJ to infer the onset date of Plaintiff's depression. Instead, the ALJ determined that because there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured Plaintiff was not disabled. (R. at 21). As such, the ALJ's failure to infer an onset date was in violation of SSR 83-20. *See* SSR 83-20 (where adequate medical records are unavailable "it [is] necessary to infer the onset

date from the medical and other evidence that describe the history and symptomatology of the disease process.").

Defendant's second argument that Plaintiff failed to establish that he suffers from a slowly progressive impairment and as such SSR 83-20 is inapplicable, is similarly unpersuasive. (Def.'s Br. 18-19). As an initial matter, depression has been held to be a slowly progressive impairment in instances where the claimant's condition worsens over a period of time. *See e.g. Kirkwood v. Astrue,* CIV.A.09-1347, 2010 WL 3239167 at *1 (E.D. Pa. Aug. 11, 2010) (holding that "a worsening of [claimant's] symptoms ... evidence[d] the progressive nature of [claimant's] disease."); *see also Wilson v. Astrue,* 10-4517, 2011 WL 2036673 at *5 (E.D. Pa. May 24, 2011) (internal citations and quotations omitted) (holding that "the ALJ must infer the onset date based on an unclear medical record and [where] the impairment at issue becomes progressively worse over an extended period of time."). Moreover, as argued by Plaintiff, SSR 83-20 dictates that an "ALJ should call on the services of a medical advisor when he or she must infer the onset date of an impairment that is not clear from the applicant's medical records." *Jakubowski,* 215 F. App'x at 107 (quoting SSR 83-20). In such circumstances where reasonable inferences about the progression of the impairment cannot be ascertained "on the basis of the evidence in the file and additional medical evidence is not available, it may be necessary to explore other sources of documentation." *Newell,* 347 F.3d at 549. Such information "may be obtained from family members, friends, and former employers to ascertain why medical evidence is not available for the pertinent period and to furnish additional evidence regarding the course of the individual's condition." *Id.*

Here, the ALJ noted that there is no medical evidence to substantiate Plaintiff's claimed depression. (R. at 21). However, Dr. Cruz testified that she believed Plaintiff's disabling

10

impairment existed prior to her treatment of Plaintiff. (*Id.* at 43). Additionally, a letter from Plaintiff's sister, Joanna Gibson was read into the record at the hearing. (*Id.* at 44-46). In relevant part, the letter provided that following the death of their mother in 1993, Plaintiff lived in the attic of the family home and refused to move into an apartment on the second floor. (*Id.*). The letter additionally provided that he was not really functioning, he had suicidal ideations, he isolated himself from his family and he had no friends. (*Id.* at 45-46). The letter from Plaintiff's sister ultimately discussed the progression of Plaintiff's depression from the time his mother passed away until December 2010. (*Id.* at 45-46, 201-202).

Despite the testimony of Dr. Cruz, the ALJ's decision provided that he gave little weight to all of the treating source opinions which provided that Plaintiff's disability started prior to the date last insured on the ground that such opinions are not based on contemporaneous reports but rather on Plaintiff's subjective history as recounted to his treating physicians. (*Id.* at 21). While the ALJ disregarded the opinions of Plaintiff's treating doctors, the ALJ also failed to seek medical advice from a medical expert in the field of psychiatry. *See Orquera v. Comm'r of Soc. Sec.*, 416 F. App'x 139, 142 (3d Cir. 2008) (internal citations and quotations omitted) (holding that "SSR 83-20 instructs the ALJ to infer the onset date from the evidence but requires that the ALJ's judgment have a legitimate medical basis."). The ALJ similarly failed to consider the letter from Plaintiff's sister. (R. at 21). The ALJ did not make reference to or provide his reasons for discounting the letter submitted by Plaintiff's sister, which attested to Plaintiff's condition prior to September 2004. (*Id.*).

Accordingly, the ALJ's finding was in violation of SSR 83-20. *See Klangwald v. Comm'r of Soc. Sec.*, 269 F. App'x 202, 205 (holding that "we have generally applied SSR 83-20 only where medical evidence from the relevant period is unavailable."); *see also Newell*, 347

11

F.3d at 549 (holding that where there is a lack of medical evidence it "may be necessary to explore other sources of documentation."). This Court remands the ALJ's determination as to the onset date of Plaintiff's disability. The Court further directs the ALJ to adhere to SSR 83-20, seek medical advice and explore other sources of documentation in determining the onset date of Plaintiff's disability.

### B. Plaintiff Fails to Establish Bias

Plaintiff additionally argues that remand to a different ALJ is appropriate. (Pl.'s Br. 27). The Third Circuit has held that claimants are entitled to have evidence evaluated by an unbiased adjudicator. *See Hummel v. Heckler,* 736 F.2d 91, 95 (3d Cir. 1984). The right to an impartial decision-maker is of even greater importance in administrative proceedings in light of the absence of procedural safeguards which are normally available in judicial matters. *See Ventura v. Shalala,* 55 F.3d 900, 903 (3d Cir. 1995). Nonetheless, hearing officers are provided a presumption of impartiality unless a claimant is able to demonstrate that they have "display[ed] deep-seated favoritism or unequivocal antagonism that would make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555 (1994).

Here, Plaintiff argues that the ALJ has demonstrated bias on the basis that he completely ignored all evidence in the record in favor of his own lay opinion regarding Plaintiff's depression. (Pl.'s Br. 27). In instances where the court has remanded a case to a different ALJ, "there has been evidence of coercion, intimidation, or other misconduct on the part of the original ALJ." *Ventura,* 55 F.3d at 902. Plaintiff in this case points to nothing to establish a "deep-seated favoritism or unequivocal antagonism" necessary to establish bias. *See Liteky,* 510 U.S. at 555 (holding that a basis for bias requires "a deep-seated favoritism or antagonism that would make fair judgment impossible"). Plaintiff offers only the ALJ's improper finding that

12

Plaintiff's depression was not severe. After reviewing the transcript, there is no reason to find that the ALJ in this case demonstrated bias towards Plaintiff. Thus, the Court rejects Plaintiff's request for a different ALJ on remand.

## IV. CONCLUSION

The Court has reviewed the entire record and, for the reasons discussed above, finds that the ALJ's determination at step two that Plaintiff was not disabled is not supported by substantial evidence. Accordingly, the Court remands this matter to the ALJ. On remand, the Court directs the ALJ to adhere to SSR 83-20, seek medical advice and explore other sources of documentation in determining the onset date of Plaintiff's disability. If the ALJ determines that Plaintiff has a severe impairment or combination of impairments, the ALJ is further directed to continue on with the sequential evaluation process. An appropriate Order accompanies this Opinion.

/s/ Jose L. Linares
JOSE L. LINARES
U.S. DISTRICT JUDGE

DATED: May 5, 2014